# Richmond

## THRAVES LOCKETT ANDERSON v. THORINGTON CONSTRUCTION COMPANY INCORPORATED.

October 12, 1959.

Record No. 4986.

Present, All the Justices.

The opinion states the case.

*George E. Allen, Sr.* and *Frank C. Maloney, III* (*Allen, Allen, Allen & Allen,* on brief), for the plaintiff in error.

*Richard L. Williams* (*Richard N. Harris; Bremner, Parker, Neal, Harris & Williams,* on brief), for the defendant in error.

EGGLESTON, C. J., delivered the opinion of the court.

Thraves Lockett Anderson, sometimes hereinafter called the plaintiff, filed an action at law against Thorington Construction Company, Incorporated, hereinafter referred to as Thorington or the defendant, to recover damages for personal injuries alleged to have been caused by the negligence of the defendant's servants during the construction of a portion of the Richmond-Petersburg Turnpike. The plaintiff alleged that at the time of his injuries the defendant was engaged in certain construction work on the turnpike under a contract with the Richmond-Petersburg Turnpike Authority, and that he, the plaintiff, was performing his duties as a project inspector for Parsons, Brinckerhoff, Hall & MacDonald, consulting engineers for the Authority.

The defendant filed a special plea alleging that the lower court was without jurisdiction of the action at law because, it said, the matter was within the exclusive jurisdiction of the Industrial Commission of Virginia. After hearing evidence on the issues raised by the plea the lower court entered a final judgment sustaining the plea and dismissing the action. We granted the plaintiff a writ of error.

The facts are not in dispute. By the Act of the General Assembly

of 1954, ch. 705, p. 920,[1] the General Assembly created the Richmond-Petersburg Turnpike Authority, hereinafter referred to as the Authority, as a "political subdivision of the Commonwealth," to exercise "the powers conferred * * * in the construction, operation and maintenance of the turnpike project" which was to be deemed "to be the performance of an essential governmental function." Among other things, the Authority was authorized to determine the location of the turnpike project, to obtain title to the right of way by purchase or under its power of eminent domain, "to construct, maintain, repair and operate the turnpike project," to issue revenue bonds for financing the project, and in general to do all other acts and things necessary or convenient "to carry out the powers expressly granted" to it. It was empowered to sue and was subject to be sued.

Pursuant to these grants of power the Authority contracted with Parsons, Brinckerhoff, Hall & MacDonald, an engineering firm of the city of New York, hereinafter referred to as the Engineers, to provide the services of consulting engineers for the project. The work of the Engineers consisted of a preliminary stage, followed by the preparation of all contract plans and specifications for the turnpike. Then, as these plans and specifications were approved by the Authority and construction work begun, it became the duty of the Engineers to see that the construction was performed in accordance with the approved specifications. To carry out this latter phase of its work the Engineers employed resident engineers and inspectors to supervise and inspect each project involved in the construction of the turnpike. The plaintiff, Anderson, was among those employed by the Engineers for this purpose.

Since the Authority had no force of employees by which it could do the necessary construction work, it awarded the construction of various sections of the work to a number of contractors. Thorington and two other contractors, combined as joint adventurers, were awarded the contract to perform a section of this work. It was during the performance of this contract which was being supervised by Anderson on behalf of his employer, the Engineers, that Anderson was injured.

Under the terms of their contracts with the Authority each contractor, including the Engineers, was required to carry workmen's compensation insurance for its own employees. The Authority also

---

[1] This Act has been codified as §§ 33-255.24 to 33-255.44, both inclusive, of the Code of Virginia of 1950, as amended.

carried such insurance. Consequently, when Anderson, the plaintiff, was injured, the Authority, the Engineers and Thorington were covered by workmen's compensation insurance. Anderson was paid workmen's compensation benefits by the compensation insurance carrier for the Engineers, his employer. Thereafter he brought this suit against Thorington, the party allegedly responsible for his injuries.

Upon the evidence submitted on the issues raised by the special plea the lower court found that both Thorington and the Engineers were independent contractors with and under the Authority. Hence, the critical question is whether under the relationship of the parties and the circumstances stated, the plaintiff, an employee of the Engineers, one independent contractor on the project, may maintain an action at law against Thorington, another independent contractor on the project, to recover damages for his injuries caused by the negligence of the servants of the defendant independent contractor, or whether the plaintiff's right to recover workmen's compensation benefits is his exclusive remedy.

The determination of the question depends upon the interpretation and application of the pertinent provisions of the Workmen's Compensation Act embodied in the Code sections printed or referred to in the margin.[2]

---

[2] "§ 65-5. *Employees of independent contractors.*—Nothing in this Act contained shall be construed to make, for the purposes of this Act, the employees of an independent contractor the employees of the person or corporation employing or contracting with such independent contractor."

"§ 65-26. *Liability of owner to workmen of subcontractors.*—When any person (in this section and §§ 65-28 and 65-29 referred to as 'owner') undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section and §§ 65-28 to 65-31 referred to as 'subcontractor') for the execution of performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Act which he would have been liable to pay if the workman had been immediately employed by him."

Similarly, under Section 65-27 a contractor is liable for compensation to workmen of the subcontractor, and under Section 65-28 a subcontractor is liable to workmen of a sub-subcontractor.

"§ 65-30. *Indemnity of principal from subcontractor.*—When the principal contractor is liable to pay compensation under any of the four preceding sections, he shall be entitled to indemnity from any person who would have been liable to pay compensation to the workman independently of such sections or from an intermediate contractor and shall have a cause of action therefor."

"§ 65-31. *Workman may recover from subcontractor.*—Nothing in the five preceding sections shall be construed as preventing a workman from recovering com-

In *Sykes* v. *Stone & Webster Engineering Corp.*, 186 Va. 116, 41 S. E. 2d 469, we held that the employee of a subcontractor could not maintain against the principal contractor a common-law action for damages for personal injuries. We there pointed out that Section 65-5 (then the last paragraph of § 12 of the Act as amended), providing that the employees of an independent contractor are not the employees of the person who employed the independent contractor, must be read and reconciled with Sections 65-26 to 65-28, both inclusive (then § 20(a) of the Act as amended), which make the owner, contractor and subcontractor, respectively, liable for compensation benefits, and that if the workman is doing work which the owner has undertaken to perform as a part of his own trade, business or occupation, the owner is liable to the workman for compensation. On the other hand, we said that if the work which the workman is doing is not a part of the trade, business or occupation of the owner, and the owner contracts with a contractor to do it, the contractor, but not the owner, is liable to the workman for compensation under the Act. 186 Va., at pages 121, 122, 41 S. E. 2d, at pages 471, 472.

We further pointed out that the "other party" who is amenable to a common-law action by an employee under Section 65-38 "refers exclusively" to one who is a stranger to the employment and the work and does not include one who has accepted the Act and is within the

---

pensation under this Act from a subcontractor instead of from the principal contractor but he shall not collect from both."

"§ 65-38. *Subrogation of employer to employee's rights against third parties;* * * *. —The making of a lawful claim against an employer for compensation under this Act for the injury or death of his employee shall operate as an assignment to the employer of any right to recover damages which the injured employee or his personal representative or other person may have against any other party for such injury or death, and such employer shall be subrogated to any such right and may enforce, in his own name or in the name of the injured employee or his personal representative, the legal liability of such other party. * * *"

"§ 65-37. *Employee's rights under Act exclude all others.*—The rights and remedies herein granted to an employee when he and his employer have accepted the provisions of this Act respectively to pay and accept compensation on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin, at common law or otherwise, on account of such injury, loss of service or death."

"§ 65-99. *Duty to insure payment of compensation; effect of insurance.*—Every employer subject to the compensation provisions of this Act shall insure the payment of compensation to his employees in the manner hereinafter provided. While such insurance remains in force he or those conducting his business shall only be liable to an employee for personal injury or death by accident to the extent and in the manner herein specified."

express terms of Section 65-99. (186 Va., at pages 120, 121, 41 S. E. 2d, at page 471.) Continuing, we said:

"It clearly appears to be the purpose of section 20(a) [now §§ 65-26 to 65-31] to bring within the operation of the Compensation Act all persons engaged in any work that is a part of the trade, business or occupation of the original party who undertakes as owner, or contracts as contractor, to perform that work, and to make liable to every employe engaged in that work every such owner, or contractor, and subcontractor, above such employe. But when the employe reaches an employer in the ascending scale, of whose trade, business or occupation the work being performed by the employe is not a part, then that employer is not liable to that employe for compensation under section 20(a). At that point paragraph 5 of section 12 [now § 65-5] intervenes and the employe's right of action at common law is preserved." 186 Va., at pages 122, 123, 41 S. E. 2d, at page 472.

These principles were reaffirmed in *Rea v. Ford*, 198 Va. 712, 96 S. E. 2d 92, in which we held that the personal representative of an employee of a principal contractor could not maintain an action for wrongful death against a subcontractor because such contractors were not strangers to the employment and the work and were under the canopy of the Act. 198 Va., at page 717, 96 S. E. 2d, at page 96.

On the other hand, in *Kramer v. Kramer*, 199 Va. 409, 100 S. E. 2d 37, we held that where two independent contractors were engaged in constructing a church, the personal representative of one independent contractor might maintain an action for wrongful death against the other independent contractor, because the work of building the church was not a part of the trade, business or occupation of the church so as to make it liable for compensation under Section 65-26.

In the present case both independent contractors, Thorington and the Engineers, were engaged in the construction of the turnpike which was a part of the trade, business or occupation of the owner, the Authority. As the trial court aptly pointed out in its written opinion:

"* * * While the ultimate end and object of the Legislature in creating the Authority was to have it operate the turnpike as a toll road, it is wholly illogical to contend that such purpose was the paramount and sole end and object. It is no less a function of the Authority to acquire title to the right of way, to construct the turn-

pike, to repair and maintain it, than it is to operate the facility, after the acquisition of the right of way and the construction of the turnpike.

"In a very real sense, the Authority was engaged at every step of the way, in the course of its usual trade, business or occupation, from the preliminary surveys, through the acquisition of the right of way, the construction, and the final operation, maintenance and repair of the turnpike. The Legislature has so declared by vesting it with the power and charging it with the responsibility of so doing."

Since both Thorington and the Engineers were engaged in the trade, business or occupation of the Authority, neither was a stranger to the employment and the work. Both, as well as the Authority, were under the canopy of the Workmen's Compensation Act. Consequently, Thorington was not an "other party" within the meaning of Section 65-38 and subject to an action at law for damages for the personal injuries to the Engineers' employee, Anderson. *Sykes* v. *Stone & Webster Engineering Corp., supra; Rea* v. *Ford, supra.*

■ Moreover, under the express terms of Section 65-26, the Authority, the "owner," was liable to Anderson for workmen's compensation benefits which the owner "would have been liable to pay if the workman had been immediately employed" by it; that is, Anderson was the statutory employee of the "owner" Authority. *Sykes* v. *Stone & Webster Engineering Corp., supra* (186 Va., at 124, 125, 41 S. E. 2d, at page 473).

Similarly, under Section 65-26, the employees of Thorington were the statutory employees of the Authority. Thus the employees of the Engineers, including Anderson, and the employees of Thorington were statutory fellow servants. This being so, Anderson could not maintain an action at law against the negligent servants of Thorington who caused his injury. *Feitig* v. *Chalkley,* 185 Va. 96, 38 S. E. 2d 73. Neither may Anderson maintain this common-law action against Thorington, the principal of the alleged negligent servants, for this would entitle Thorington to seek indemnity from its negligent employees which would be tantamount to permitting Anderson to sue such negligent employees directly. 42 C. J. S., Indemnity, § 21, pp. 596, 597.

■ We do not agree with the argument of the plaintiff that although the Authority was vested with the power and responsibility of building the road it did not exercise such power in that it employed no workmen for that purpose. The answer to this argument

is that by its express terms Section 65-26 contemplates that the owner may perform or execute work which is a part of his trade, business or occupation through a "subcontractor," as was done here.

■ Nor do we agree with the plaintiff's contention that because the act creating the Authority provides that it is "created and constituted a political subdivision of the Commonwealth," it is not an "owner" within the meaning of Section 65-26 under our decisions in *Bamber* v. *City of Norfolk*, 138 Va. 26, 121 S. E. 564; *City of Portsmouth* v. *Daniels*, 157 Va. 614, 162 S. E. 324; and *Board of Supervisors of Amherst County* v. *Boaz*, 176 Va. 126, 10 S. E. 2d 498.

In the *Bamber* case we held that the administratrix of a workman employed by a contractor who was erecting a standpipe for the city, and killed in the course of his employment, was not entitled to compensation under Section 20(a) (now § 65-26) in its then form. Under the language of the section as then written, the words "principal contractor" were used where the word "owner" is now found. We there held that "the act does not embrace all employees upon municipal work, but only those employed by the municipality itself and in work which it is the business of the municipality to execute." 138 Va., at page 42.[3]

In the *Daniels* case an employee of an independent contractor while painting a standpipe owned and used by the city as a part of its water system was injured in a fall. We held that the employee was not entitled to compensation from the city under the present language of Section 65-26 which had been amended subsequent to the decision in the *Bamber* case. (Acts of 1924, p. 478.) We said that since Section 65-26 "makes no mention of the State or its political subdivisions or municipal corporations," it is not applicable to them. 157 Va., at page 618.

In the *Boaz* case we held that a carpenter hired by a janitor of a courthouse to repair a window and injured while so doing, was not entitled to compensation from the board of supervisors because he was a casual employee whose employment was not "in the usual course of the trade, business, occupation or profession of the employer" and was expressly excluded by Section 65-25. (176 Va., at page 129.) Moreover, we said, the "expression 'trade, business or occupation' " (*sic*) in Section 65-4 relates "primarily to business

---

[3] For a clarification of the *Bamber* case in the light of the present language of Section 65-26, see *Sykes* v. *Stone & Webster Engineering Corp.*, 186 Va. 116, 121, 41 S. E. 2d 469, 471.

operations of persons and private corporations" and was not intended to apply to "political entities." 176 Va., at page 130.

Each of these decisions is readily distinguishable from the present case in that at the time of the accident neither the contractor nor his employee was performing any work which was a part of the "trade, business or occupation" of the owner within the meaning of Section 65-26.

But aside from this, the expressed exclusion of the applicability of the Act to political subdivisions should be considered in the light of the particular entities which were there involved, that is, a municipal corporation in the *Bamber* and the *Daniels* cases and a county board of supervisors in the *Boaz* case. To each of these the State has delegated certain functions of local government. In none of these cases were we concerned with the applicability of the Act to a political subdivision such as the Authority which was created for the limited public purpose of constructing, maintaining and operating a turnpike.

We agree with the holding of the lower court that the plaintiff's remedy under the Workmen's Compensation Act excludes his right to maintain the present action at law. Code, § 65-37. Accordingly, the judgment is

*Affirmed.*